## AMERICUS GROCERY CO. *v.* BRACKETT & CO.

1. A sale of a chattel by a particular description imports a warranty that the article sold is of the kind specified.
2. Whether in a sale of " Texas red rust-proof seed oats " a particular variety of oats, regardless of where they were produced, was intended, or whether, because of special value derived from peculiarities of soil and climate, the term included only those raised in the State of Texas, was a question of fact for the jury.
3. A conflict in the plaintiff's evidence as to the trade meaning of the term did not of itself authorize the grant of a nonsuit.
4. Where there is a breach of warranty in the sale of chattels, the buyer can resell on the same day or retain the goods at the market price, thereby fixing the exact amount of the damages to which he is entitled for the breach.
5. Where goods inferior to those ordered are delivered, the measure of damages ordinarily is the difference between the contract price of those ordered and the market price of those delivered, at the time and place of delivery.
6. The fact that the inferior goods delivered subsequently increase in value, and are resold by the plaintiff at a price above that paid, does not deprive him of the cause of action which accrued, and became fixed as to the measure of damages, on the day of the breach.
7. Where a defendant files a special demurrer, and without insisting on a ruling thereon goes to trial on the issue raised by the petition and answer, he thereby waives any rights under the demurrer.

Argued January 22, — Decided February 13, 1904.

Complaint.    Before Judge Crisp.    City court of Americus.
August 7, 1903.

The plaintiff ordered from the defendants 10,000 bushels of
"Texas red rust-proof seed oats."    It alleges that the defendants
delivered Indian Territory and Oklahoma raised oats; that the
plaintiff did not know and by the exercise of ordinary care could
not have discovered the difference, when it received and paid for
the same; that those delivered were worth from ten to fifteen
cents a bushel less than those ordered, at the time and place of
delivery; and that it was entitled to recover $1,200 overpaid.
One witness for the plaintiff testified that the oats, though raised
in Indian Territory and Oklahoma, answered to the trade meaning
of "Texas red rust-proof seed oats."    Other witnesses testified that
the term included only those raised in Texas; that Texas grown
oats had a special value for seed, derived from the peculiar climate
and soil of that State; that Oklahoma and Indian Territory oats
were used only as feed oats, and sold at a lower price.    The mar-
ket price of all oats advanced after the sale, and the plaintiff sub-
sequently sold the oats bought at a price above that paid.

At the conclusion of the evidence the defendants moved to dis-
miss the case, on the grounds stated in the special demurrer, and
because the plaintiff was not entitled to recover under the evi-
dence.    The case was dismissed, and the plaintiff excepted.

*Shipp & Sheppard,* for plaintiff.
*Allen Fort & Son* and *E. A. Hawkins,* for defendants.

LAMAR, J.    Bargain and sale of a chattel of a particular descrip-
tion imports a warranty that the article sold is of that description.
*Miller* v. *Moore,* 83 *Ga.* 684; Civil Code, § 3558.    It was for the
jury to decide whether "Texas red rust-proof seed oats" described
a specific variety, regardless of where they were raised, as "Irish"
potatoes include those raised outside of Ireland; or whether the
trade meaning included those grown in the State of Texas, deriv-
ing their special value from the character of the soil and climate.
One witness testified that oats raised in Indian Territory and
Oklahoma came within the descriptive words.    Others, that it
meant only those raised in Texas.    A conflict in the plaintiff's
testimony did not of itself authorize the grant of a nonsuit.    It
proved its case as laid, and by going to trial on the issue raised by

petition and answer the defendants waived any advantage which they could have taken by reason of their special demurrer.

Assuming that there was in fact a breach, a recovery would not be defeated because the price advanced and several weeks later the plaintiff sold these oats raised in Oklahoma at a profit.    The law does not allow the rights of the parties to depend upon the subsequent fluctuations of the market.    Where there has been a breach, the measure of damages is ordinarily the difference between the value of the goods ordered and those delivered at the time and place of the delivery.    The amount which the plaintiff would be entitled to recover is not affected by the subsequent rise or decline in prices of those ordered, or of those delivered; nor is it changed by the fact that the plaintiff subsequently resold at an increased or decreased price.    Compare *Berry* v. *Shannon*, 98 *Ga.* 461.    Often in fact, and always in theory, the party who is damaged by such breach of a warranty of personal property can resell on the same day, or he can retain the goods at that day's market price, and the difference thus calculated represents his actual loss, as well as the measure of legal damage.    If the goods thus retained decline in value, the amount he is entitled to recover is not increased; if the goods advance, the defendant's liability is not lessened.    The rights and liabilities of each are fixed on that day, and subsequent changes in the value of the goods ordered or delivered are wholly immaterial.    Civil Code, §§ 3557, 2319, 3551.

*Judgment reversed.    All the Justices concur, except Simmons, C. J., absent.*